# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JULIO M. CAY-MONTAÑEZ**<br><br>PLAINTIFF<br><br>VS.<br><br>**AXA EQUITABLE LIFE INSURANCE COMPANY;**<br>**DISABILITY MANAGEMENT SERVICES, INC.;**<br>**UNUM GROUP;**<br>**DR. JORGE H. LONDOÑO,** his spouse **JANE DOE** and the conjugal partnership between them;<br>**DR. TERESA DALMAU,** her spouse **JOHN DOE** and the conjugal partnership between them;<br>**DR. JEFFREY HARRIS GREEN,** her spouse **JOHN DOE** and the conjugal partnership between them;<br>**DR. JOHN J. SZLYK,** her spouse **JOHN DOE** and the conjugal partnership between them;<br>**INSURANCE COMPANY XYZ;**<br>**COMPANY ABC;**<br>**JOHN & JANE DOE.**<br><br>DEFENDANTS | CIVIL NO. 19-1124<br><br><br>WRONGFUL DENIAL OF BENEFITS;<br>EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA);<br>TORT CIVIL ACTION<br><br>TRIAL BY JURY DEMANDED |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW, Julio M. Cay-Montañez,** ("Plaintiff"), through the undersigned attorneys and very respectfully states, alleges and prays as follows:

### PRELIMINARY STATEMENT

1. Plaintiff obtained two insurance policies from AXA Equitable Life Insurance Company ("AXA"). Decades later, Plaintiff applied for disability benefits based on these

insurance policies. The disability benefits were received by Plaintiff since October 6th, 2011 until March 4th, 2016, when AXA wrongfully denied the disability benefits based on insufficient evidence. Plaintiff appealed the decision to deny Plaintiff's disability benefits. Plaintiff's appeal was handled by Disability Management Services, Inc. ("DMS") and the UNUM GROUP ("UNUM"). In February of 2018, DMS and UNUM wrongfully confirmed AXA's decision to deny the disability benefits to the Plaintiff based insufficient evidence that did not asses Plaintiff's disability with regards to his ability to perform his job-related tasks. Even though at present the Plaintiff continues to suffer from his disability and cannot perform his job-related tasks, AXA wrongfully denied his disability benefits based on insufficient evidence. Therefore, the Plaintiff seeks this Court to reverse the denial of disability of benefits based on the insufficient evidence used by AXA, DMS and UNUM and to enforce Plaintiff's rights under the insurance policy plan which has been wrongfully denied.

2. Plaintiff files this civil action against AXA, DMS and UNUM (jointly referred to as "Defendants"), based on the Wrongful Denial of Benefits civil action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USCA sec. 1132. Additionally, Plaintiff files this civil action against Dr. Jorge H. Londoño, Dr. Teresa Dalmau, Dr. Jeffrey Harris Green and Dr. John J. Szlyk ("Defendants' Experts") based on tort civil action pursuant to Article 1802 of the Puerto Rico Civil Code.

3. Plaintiff seeks compensatory, punitive, double and liquidated damages and equitable and injunctive relief for Defendants' wrongful denial of disability benefits pursuant to the two insurance policies of AXA and Defendants' Experts negligent evaluations which led to this wrongful denial of disability benefits. In addition, Plaintiff seeks other specific remedies that

restore him to the position that he would have held in the absence of the wrongful denial of disability benefits.

## JURISDICTION AND VENUE

4. The United States District Court for the District of Puerto Rico has jurisdiction over this action under 28 U.S.C. sec. 1331 since the matter of this civil action arises under the Constitution, laws, or treaties of the United States. Specifically, Plaintiff files this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USCA sec. 1132.

5. Plaintiff further invokes pendent or supplemental jurisdiction of this Court under 28 USC sec. 1367 to hear Puerto Rico law claims arising from the same nucleus of operative facts. Specifically, Plaintiff files this action tort damages civil Action pursuant to Articles 1802 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

6. Pursuant to 28 U.S.C. sec. 1391 (a), venue is proper in the District of Puerto Rico because the events that justify the causes of action occurred in this district.

## PARTIES

7. Plaintiff, Julio M. Cay-Montañez is of legal age, retired, married, domiciled and resident of San Juan, Puerto Rico. Plaintiff's postal address is the following: PO Box 975, San Lorenzo, PR 00754-0975.

8. According to information and belief, Defendant AXA Equitable Life Insurance Company ("AXA") is found to be incorporated in the Registry of Corporations of the Department of State of the Commonwealth of Puerto Rico. It is dedicated to the insurance industry. The address of its resident agent in Puerto Rico is: c/o Fast Solutions, LLC, Citi Tower

252, Ponce de Leon Ave., Floor 20, San Juan, PR 00918. Plaintiff reserves the right to amend the Complaint once more information is discovered.

9. According to information and belief, Defendant Disability Management Services, Inc. ("DMS") is incorporated pursuant to Massachusetts Law. It is dedicated as a third-party administrator for AXA. The address of its resident agent in Massachusetts is: Registered Agent Solutions, Inc., 44 School St. Suite 325, Boston, MA 02108. Plaintiff reserves the right to amend the Complaint once more information is discovered.

10. According to information and belief, Defendant UNUM GROUP ("UNUM") is incorporated pursuant to Delaware Law. It is dedicated as a third-party administrator for AXA. The address of its resident agent in Delaware is: Registered Agent Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. Plaintiff reserves the right to amend the Complaint once more information is discovered.

11. According to information and belief, Defendant Jorge H. Londoño ("Londoño") is an expert witness used by Defendants for purposes of investigating Plaintiff's disability. His office address is 1150 Madruga Avenue Suite 509, Coral Gables, FL 33146. Londoño has a spouse and they have a conjugal partnership between them. Plaintiff reserves the right to amend the Complaint once more information is discovered.

12. According to information and belief, Defendant Teresa Dalmau ("Dalmau") is an expert witness used by Defendants for purposes of investigating Plaintiff's disability. Her office address is Ave. Hostos #579 Baldrich, Hato Rey, Puerto Rico 00918. Dalmau has a spouse and they have a conjugal partnership between them. Plaintiff reserves the right to amend the Complaint once more information is discovered.

13. According to information and belief, Defendant Jeffrey Harris Green ("Green") is an expert witness used by Defendants for purposes of investigating Plaintiff's disability. His office address is 170 Cold Soil Road, Cedar Glen Professional Association, Princeton NJ 08540. Green has a spouse and they have a conjugal partnership between them. Plaintiff reserves the right to amend the Complaint once more information is discovered.

14. According to information and belief, Defendant John J. Szlyk ("Szlyk") is an expert witness used by Defendants for purposes of investigating Plaintiff's disability. His office address is UMUM Provident, 18 Chestnut St., Worcester, MA 01603. Szlyk has a spouse and they have a conjugal partnership between them. Plaintiff reserves the right to amend the Complaint once more information is discovered.

15. Co-Defendant, Insurance Company XYZ ("Insurance Company XYZ"), held an insurance policy in favor of the Defendants. At the time of the wrongful denial of benefits described herein, Insurance Company XYZ held an insurance policy in favor of the Defendants', specifically to cover these claims. Their current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

16. Co-Defendant, Company ABC (hereinafter referred to as "Company ABC"), is another business company, which is the parent company or an affiliated company of the Defendants, that directed and had knowledge of Defendants' wrongful denial of benefits of which Plaintiff is complaining. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

17. Co-Defendant, John & Jane Doe (hereinafter referred to as "Doe"), is another agent, supervisor, official or director who is affiliated with the Defendants, who directed and had knowledge of Defendants' wrongful denial of benefits of which Plaintiff is complaining. Their

Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

## THE FACTS

18. Plaintiff worked for the company Metro Tech Corporation ("Metro Tech").

19. Metro Tech provides services regarding special equipment and instruments for the Pharmaceutical Industry following the Code of Federal Regulations ("CFR"). Specifically, Metro Tech must comply with the relevant portions under 21 CFR secs. 211.22, 211.25, 211.28 and 211.34.

20. Plaintiff worked for Metro Tech for over 30 years.

21. Plaintiff worked as President of Metro Tech.

22. Plaintiff's work functions and duties not only involved administrating Metro Tech, but also being heavily involved in the installation, calibration, validation and maintenance of the Metro Tech equipment and instruments supplied to their clients within the Pharmaceutical Industry, in compliance with 21 CFR secs. 211.22, 211.25, 211.28 and 211.34.

23. During the time working for Metro Tech, the Plaintiff obtained two insurance policies from AXA.

24. The insurance policies are identified by the following numbers: AXA Policy 88721682 and AXA Policy 95706817.

25. Said insurance policies establish that if the insured suffers a disability that severely affects the main duties of Plaintiff's occupation, he would be eligible to receive disability benefits.

26. In or around 2010 and/or 2011, Plaintiff began to suffer severe bouts of depression due to various circumstances.

27. Due to Plaintiff's severe bouts of depression, the Plaintiff was diagnosed as disabled by a medical provider.

28. The Plaintiff attended with the medical provider for approximately three to four years.

29. Specifically, the medical provider used the guides to evaluate permanent mental impairment.

30. Plaintiff thus sought disability benefits from both the Social Security Administration ("SSA") and the private AXA Insurance Policies.

31. The Plaintiff was evaluated by the SSA and was provided disability benefits pursuant to his social security.

32. The Plaintiff presently receives the disability benefits from the SSA.

33. The Plaintiff contacted AXA approximately on 2013 to submit a claim for disability benefits pursuant to the AXA Insurance Policy.

34. Plaintiff informed AXA that he ceased to work approximately in 2012.

35. AXA began to provide disability benefits since October of 2011, recognizing that date as the Claim's onset date.

36. Plaintiff received monthly disability benefit payments pursuant to the AXA insurance policy.

37. Plaintiff's monthly disability benefit was for the amount of approximately four thousand dollars ($4,000.00) per month.

38. Plaintiff received monthly disability benefit payments from December of 2013 until March of 2016.

39. Nonetheless the disability benefits provided, AXA continued to evaluate Plaintiff's eligibility for disability benefits.

40. As part of AXA's evaluation of Plaintiff's eligibility for disability benefits, AXA utilized DMS and UNUM as their investigators.

41. DMS and UNUM are both paid and retained by AXA for the purposes of investigating the eligibility of claimants who seek disability benefits.

42. DMS and UNUM have a conflict of interest in evaluating and investigating Plaintiff's eligibility for AXA's disability benefits.

43. DMS and UNUM hired and paid Londoño, Dalmau, Green and Szlyk as their "experts" to either investigate and interview the Plaintiff, as well as review medical files.

44. Londoño, Dalmau, Green and Szlyk have a conflict of interest in evaluating, reviewing and investigating Plaintiff's eligibility for AXA's disability benefits.

45. Defendants' Experts either did not interview or briefly interviewed the Plaintiff in a span of less than half an hour to an hour.

46. Defendants' Experts made generalized statements based on their brief observations, review and analysis.

47. None of Defendants' Experts carefully evaluated the Plaintiff using the scientific rating instruments recommended by medical treaties to corroborate if a Patient can perform his job-related functions.

48. Specifically, the Defendants' Experts did not use the guides to evaluate permanent mental impairment.

49. The Defendants' Experts did not use the psychiatric rating scale that is necessary to make a reasoned judgment.

50. By not using the psychiatric rating scale, the Defendants' Experts did not provide sufficient medical evidence that correctly assessed Plaintiff's ability to perform his job-related tasks.

51. Even though the Defendants and Defendants' Experts had conflicts of interests to evaluate and investigate Plaintiff's eligibility for AXA's disability benefits, they pursued the matter and recommended the wrongful denial of disability benefits based on insufficient medical evidence.

52. The Defendants sent Plaintiff two letters on April and May of 2016, informing the Plaintiff that they would cease and deny the disability benefits to the Plaintiff.

53. Defendants ceased providing the monthly disability benefit payments to the Plaintiff by March of 2016.

54. The Plaintiff filed a timely administrative appeal as to the Defendants' decision to wrongfully deny Plaintiff's disability benefits.

55. The Plaintiff submitted before the Appeal various evidence to demonstrate that there was insufficient medical evidence to justify the denial of disability benefits.

56. Specifically, the Plaintiff hired another expert witness, Dr. Jose R. Rodriguez Cay ("Plaintiff's Expert"), whom issued an opinion that the Defendants' Experts made vast reaching conclusions based in insufficient evidence.

57. Plaintiff's Expert determined that the reports of Defendants' Experts contained large omissions and did not rely on any scientific ratings instrument necessary to evaluate the mental impairment of the Plaintiff.

58. Plaintiff's Expert demonstrated that no psychiatric rating scale was used in the reports of Defendants' Experts that correctly shows Plaintiff's Mental and Behavior Disorder with regards to Plaintiff's ability to perform his job-related tasks.

59. Specifically, Plaintiff's Expert issued an opinion that no medical evidence was correctly assessed to determine if the Plaintiff could perform his work functions and duties involved in the installation, calibration, validation and maintenance of the Metro Tech equipment and instruments supplied to their clients within the Pharmaceutical Industry, in compliance with 21 CFR secs. 211.22, 211.25, 211.28 and 211.34.

60. Plaintiff's Expert informed the Defendants that none of Defendants' Experts considered Plaintiff's job functions and duties in their reports, which was strictly based on their brief interaction with the Plaintiff in a casual half hour conversation.

61. Plaintiff's Expert determined that Defendants' Experts were negligent in how their examination was generalized and superficial, without support of any type of documentation and without considering the cultural differences.

62. Plaintiff incurred in approximately ninety-six thousand dollars ($96,000.00) in expert witness expenses during the administrative appeal process.

63. After two years transpired, the Defendants rendered two letters on February of 2018, notifying the Plaintiff that the Defendants determined that they would deny Plaintiff's disability benefits.

64. The Defendants wrongfully denied Plaintiff's disability benefits in violation of the terms of AXA's insurance policy.

65. The Defendants breached their fiduciary duty to the Plaintiff by violating the terms of the insurance plan.

66. The Defendants' Experts were negligent in their duties to provide an extensive and specific examination to carefully evaluate Plaintiff's disability.

67. The Defendants' Experts were negligent in their duties in that they did not provide sufficient medical evidence to assess Plaintiff's ability to perform his job-related tasks.

68. Based on Defendants' Experts negligent actions, they caused that Defendants' wrongfully deny Plaintiff's disability benefits in violation of the terms of AXA's insurance policy.

69. Company ABC was the parent company or an affiliated company of the Defendants. Company ABC had knowledge of Defendants' wrongful denial of disability benefits for the Plaintiff. Company ABC did not take any proper action to rectify and/or avoid the wrongful denial of disability benefits incurred by Defendants. Company ABC allowed Defendants to wrongfully deny the disability benefits of the Plaintiff and thus breached their fiduciary duty by violating the terms of the insurance plan.

70. John & Jane Doe had knowledge of Defendants' wrongful denial of disability benefits for the Plaintiff. John & Jane Doe did not take any proper action to rectify and/or avoid the wrongful denial of disability benefits incurred by Defendants. John & Jane Doe allowed Defendants to wrongfully deny the disability benefits of the Plaintiff and thus breached their fiduciary duty by violating the terms of the insurance plan.

71. At the time of these discriminatory incidents, Insurance Company XYZ held an insurance policy in favor of the Defendants, specifically to cover said claims. Said insurance policy was in force at the time of the discriminatory incidents.

72. Ever since Plaintiff's disability benefits were wrongfully denied, the Plaintiff has suffered economic losses and deprivation of his disability benefits.

73. Plaintiff has lost sleep and rest, felt humiliated, and has been at loss of his peace of mind and emotional stability.

74. Presently, Plaintiff is still being medically treated for severe depression, being prescribed several medicines to treat the same.

75. The Defendants and Defendants Experts are liable for all of the Plaintiff's damages.

## FIRST CAUSE OF ACTION

## WRONGFUL DENIAL OF BENEFITS

76. Plaintiff re-alleges each allegation stated in the preceding paragraphs as if fully set forth herein.

77. Defendants' actions altered Plaintiff's disability benefits pursuant to the AXA Insurance Policies.

78. Plaintiff was eligible for the disability benefits pursuant to the AXA Insurance Policies.

79. However, Defendants did not make a reasoned judgment based on medical evidence that assessed Plaintiff's ability to perform job-related tasks.

80. Defendants incorrectly assessed that the Plaintiff had the ability to perform job-related tasks, when the Plaintiff was in fact impaired to perform the job-related tasks in compliance with 21 CFR secs. 211.22, 211.25, 211.28 and 211.34.

81. Plaintiff seeks to recover benefits due to him under the terms of the AXA Insurance Policies.

82. Plaintiff seeks to enforce his rights under the terms of the AXA Insurance Policies.

83. Plaintiff seeks to clarify his rights to future benefits under the terms of the AXA Insurance Policy.

84. Specifically, Plaintiff's AXA Insurance Policy states the terms regarding eligibility of disability benefits.

85. Plaintiff meets the terms regarding eligibility of disability benefits.

86. Because the Plaintiff is eligible as to disability benefits pursuant to the terms of the AXA Insurance Policy, Plaintiff has the right to recover benefits due to him under those same terms.

87. Because the Plaintiff is eligible as to disability benefits pursuant to the terms of the AXA Insurance Policy, Plaintiff has the right to enforce his rights under those same terms.

88. Because the Plaintiff is eligible as to disability benefits pursuant to the terms of the AXA Insurance Policy, Plaintiff has the right to future benefits under those same terms.

89. As a result of Defendants' wrongful denial of disability benefits, Defendants are liable for compensatory, statutory and liquidated damages pursuant to 29 USC 1132 (g) for all unpaid contributions, interest on the unpaid contributions, attorney's fees, costs and any other legal or equitable relief as the Court deems appropriate.

90. The damages for unpaid contributions are estimated at no less than nine hundred sixty thousand dollars ($960,000.00) for approximately twenty years of unpaid benefits.

91. Additionally, the Defendants are liable for the interest of the unpaid contributions that are estimated at no less than nine hundred sixty thousand dollars ($960,000.00).

**SECOND CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

92. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

93. Defendants had a conflict of interest to evaluate the Plaintiff because they had a dual status as administrator and payer of the disability benefits of the Plaintiff.

94. As a result of Defendants breach of fiduciary duty, Defendants are equally liable for compensatory, statutory and liquidated damages pursuant to 29 USC 1132 (g) for all unpaid contributions, interest on the unpaid contributions, attorney's fees, costs and any other legal or equitable relief as the Court deems appropriate.

95. The damages for unpaid contributions are estimated at no less than nine hundred sixty thousand dollars ($960,000.00) for approximately twenty years of unpaid benefits.

96. Additionally, the Defendants are liable for the interest of the unpaid contributions that are estimated at no less than nine hundred sixty thousand dollars ($960,000.00).

## THIRD CAUSE OF ACTION

## TORTS DAMAGES

97. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

98. Defendants' actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

99. All Defendants are liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

100. Specifically, the Defendants' Experts either did not interview or briefly interviewed the Plaintiff in a span of less than half an hour to an hour.

101. Defendants' Experts made generalized statements based on their brief observations, review and analysis.

102. None of Defendants' Experts carefully evaluated the Plaintiff using the scientific rating instruments recommended by medical treaties to corroborate if a Patient can perform his job-related functions.

103. The Defendants' Experts did not use the guides to evaluate permanent mental impairment.

104. The Defendants' Experts did not use the psychiatric rating scale that is necessary to make a reasoned judgment.

105. By not using the psychiatric rating scale, the Defendants' Experts did not provide sufficient medical evidence that correctly assessed Plaintiff's ability to perform his job-related tasks.

106. Even though the Defendants' Experts had conflicts of interests to evaluate and investigate Plaintiff's eligibility for AXA's disability benefits, they pursued the matter and recommended the wrongful denial of disability benefits based on insufficient medical evidence.

107. Therefore, the Defendants' Experts actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

108. The Defendants' Experts are liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

109. Some of Defendants' Experts are officers and/or employees of Defendants.

110. Therefore, Defendants are vicariously liable for damages caused by their officers and/or employees in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

111. John & Jane Doe's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

112. John & Jane Doe's are liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

113. Company ABC's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

114. Company ABC is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

115. Defendants' actions as subsidiary company of Company ABC constitute an act or omission which caused damages to Plaintiff. Said act or omission was incurred due to fault or negligence.

116. Therefore, Company ABC is vicariously liable for damages caused by the Defendants' in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

117. All before mentioned Defendants are jointly and severally liable for their negligent and intentional tort actions.

118. As a result thereof, Defendants' are liable for compensatory and statutory damages pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141, 5142. These damages are estimated at no less than two million eight hundred thousand dollars ($2,800,000.00).

**FIFTH CAUSE OF ACTION**

**INSURANCE COMPANIES ARE JOINTLY AND SEVERALLY LIABLE**

119. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

120. Insurance Company XYZ is directly, jointly and severally liable, along with the other Co-defendants to the Plaintiff for the damages caused by their insured, pursuant to the terms and coverage of their respective policy of insurance.

## SIXTH CAUSE OF ACTION

## ATTORNEYS FEES AND PREJUDGMENT INTEREST

121. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

122. Defendants' are liable to Plaintiff for attorney's fees and costs under 29 U.S.C.S. 1132 (g).

123. Defendants' are liable for prejudgment interest pursuant to Rule 54 of the Federal Rules of Civil Procedure and 29 U.S.C.S. 1132 (g).

## PRAYER

Wherefore, all allegations considered, Plaintiff prays that judgment be entered in their favor and against all Defendants', specifically:

1. Granting Plaintiff's Complaint against Defendants. This Court should grant Plaintiff's complaint and find that the Defendants are liable to the Plaintiff based on the following: Wrongful Denial of Benefits civil action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USCA sec. 1132., and tort civil action pursuant to Article 1802 of the Puerto Rico Civil Code.

2. An order directing Defendants to reinstate Plaintiff to his former position and to cease and desist of any further wrongful conduct.

3. Awarding compensatory, statutory and liquidated damages pursuant to 29 USC 1132 (g) for all unpaid contributions, interest on the unpaid contributions, attorney's fees, costs and any other legal or equitable relief as the Court deems appropriate.

4. Awarding Plaintiff lost benefits, both past and future.

5. Awarding Plaintiff, the amounts before mentioned in the Complaint.

6. Awarding Plaintiff compensatory and statutory damages pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141, 5142.

7. Awarding Plaintiff reasonable attorney's fees, together with costs, litigation expenses, and necessary disbursements.

8. Awarding Plaintiff any and all other relief to which Plaintiff may be justly entitled.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

**RESPECTFULLY SUBMITTED**: In San Juan, Puerto Rico on this 5th day of February, 2019.

*S/VICTOR M. RIVERA-RIOS*
VICTOR M. RIVERA-RIOS
USDC BAR NUMBER 301202
1420 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Telephone: (787) 727-5710
Facsimile: (787) 268-1835
E-Mail: victorriverarios@rcrtrblaw.com